IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAR 28 2008

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

AMERICAN GENERAL LIFE
INSURANCE COMPANY,

        Plaintiff,

v.

MARGOLIS FAMILY I, LLC; GEORGIA
PREMIUM FUNDING COMPANY I, LLC;
MARVIN MARGOLIS; and TPF
HOLDING COMPANY, LLC,

        Defendants.

CIVIL ACTION NOS.

1:07-CV-0230-JEC

## ORDER & OPINION

This case is presently before the Court on defendant Marvin Margolis' Motion to Dismiss or, in the Alternative, Motion to Transfer Case [14]; plaintiff's Motion for Default Judgment as to Defendants Margolis Family I, LLC and TPF Holding Company, LLC [31]; defendant Georgia Premium Funding Company's Motion for Leave to File Amended Answer and Crossclaims [56]; plaintiff's Motion to Strike Marvin Margolis' Defensive Pleadings and for Judgment of Default Against Marvin Margolis ("Mr. Margolis") [73]; and plaintiff's Motion for Leave to File Documents Under Seal [74].[1]

The Court has reviewed the record and the arguments of the

---

[1]  Plaintiff has also filed a Motion for Summary Judgment [84] that is still pending before the Court. This motion will be addressed at a later time.

parties and, for the reasons set out below, concludes that defendant's Motion to Dismiss, or in the alternative, Motion to Transfer Case [14] should be **DENIED**; plaintiff's Motion for Default Judgment [31] should be **GRANTED** as to Margolis Family I, LLC and TPF Holding Company, LLC; defendant Georgia Premium Funding Company's Motion for Leave to Amend Answer and Crossclaims [56] should be **GRANTED**; plaintiff's Motion to Strike Mr. Margolis' Defensive Pleadings and for Default Judgment [73] should be **DENIED without prejudice**; and plaintiff's Motion for Leave to File Documents Under Seal [74] should be **GRANTED**.

### BACKGROUND[2]

On January 26, 2007, American General Life Insurance Company ("plaintiff" or "American General") filed a Complaint for Declaratory Judgment and Interpleader Petition seeking to rescind a $3,000,000 life insurance policy (the "Policy") issued to Marvin Margolis ("Mr. Margolis" or "defendant Margolis"). ("Compl." [1].) American General asked this Court to declare that the Policy is rescinded or that it never took effect, due to material misrepresentations made by Mr. Margolis in his application for the Policy. (Compl. [1] at p. 13.)

---

[2] As this case is before the Court on defendant's motion to dismiss, the following facts are taken from plaintiff's complaint and, for the purposes of ruling on the motion, are assumed to be true.

2

On January 31, 2005, Mr. Margolis had applied for an American General life insurance policy.[3]  In conjunction with his application, he completed a Financial Questionnaire, as well as Parts A and B of the "Georgia version[s]" of plaintiff's life insurance application. ("Financial Questionnaire" attach. as Ex. A to Opp'n to Mot. to Dismiss; "Part A of Application for Insurance" attach. as Ex. A to Opp'n to Mot. to Dismiss; "Part B of Application for Insurance" attach. as A to Opp'n to Mot. to Dismiss.)  The Policy was issued, accepted, and acknowledged on February 1, 2005 via a "Policy Acceptance and Amendment of Application" form.  ("Policy" attach. as Ex. B to Opp'n to Mot. to Dismiss; "Policy Acceptance" attach. as Ex. C to Opp'n to Mot. to Dismiss; Certificate of Ownership attach. as Ex E to Opp'n to Mot. to Dismiss).  Mr. Margolis signed the Acceptance on his own behalf and on behalf of Margolis Family I, LLC, ("Margolis Family I"), a Georgia limited liability company that Mr. Margolis created to pay the premiums for the American General insurance policy.

If American General succeeds on its claims and the Policy is rescinded, the Policy provisions require that all previously paid

---

[3]    Mr. Margolis had filed an application for insurance with American General in 2004, which was signed in Nevada.  "Part A 2004 Application" attach. as Ex. 1 to Amend. Compl.; "Part B 2004 Application" attach. as Ex. 2 to Amend. Compl.; "Financial Questionnaire" attach. as Ex. 3 to Amend. Compl.)  In 2005, Margolis re-applied for insurance with American General.  These documents were signed in Atlanta, Ga.

3

premiums be refunded. In order to deal with potentially conflicting claims for the refund, and in order to protect itself from multiple and inconsistent claims, American General filed an interpleader action along with its complaint. (Compl. [1] at pp. 13-16.) According to plaintiff, upon information and belief, either Margolis Family I, Georgia Premium Funding Company I, LLC ("Georgia Premium Funding"), Wells Fargo Bank, N.A. ("Wells Fargo"), TPF Holding Company, LLC ("TPF")[4], or Mr. Margolis is entitled to all, or a portion, of the premiums paid. Therefore, plaintiff filed the interpleader action to include each of the above as defendants.[5] (Compl. [1] at pp. 13-16.)

On March 15, 2007, Mr. Margolis, proceeding *pro se*, filed a motion to dismiss or, in the alternative, to transfer plaintiff's action to the Southern District of New York. ("Mot. to Dismiss" [14].) According to Mr. Margolis, this Court should dismiss plaintiff's claims because the Court lacks personal jurisdiction or because this district is an improper venue for the case. (*Id.*) In the alternative, plaintiff requests that this Court transfer this

---

[4]     On March 12, 2007, plaintiff filed an amended complaint seeking to add TFP Holding Company, LLC ("TFP") as a party to this case due to the apparent assignment by Georgia Premium Funding of "all of its right, title and interest in the Premium Financing Documents" to TPF. ("Amend Compl." [11] at ¶ 42.)

[5]     The Court subsequently dismissed Wells Fargo from the action pursuant to a consent motion filed by Wells Fargo and American General. ("Consent Motion" [18]; "March 20, 2007 Order" [19].)

action to the Southern District of New York, where defendant resides. (*Id.*)  On April 24, 2007, plaintiff filed an Application for Default Judgment with Respect to Margolis Family I and TPF ("Mot. for Default" [31]).  Neither Margolis Family I nor TPF responded to this motion.  Defendant Georgia Premium Funding Company then filed a Motion for Leave to Amend its Answer and Crossclaims [56].  Plaintiff most recently filed a Motion to Strike Mr. Margolis' Pleadings and for a Judgment of Default to be Entered Against Marvin Margolis [73] and a Motion for Leave to File Documents Under Seal [74].  These motions are now pending before this Court.  The Court will address Plaintiff's Motion for Leave to File Documents Under Seal [74] first.

<h2 align="center">DISCUSSION</h2>

## I.   Motion for Leave to File Documents Under Seal

American General filed a Motion for Leave to File Documents Under Seal [74].  The Court, having found that the documents filed under seal contain confidential information produced by Mr. Margolis, hereby **GRANTS** plaintiff's Motion for Leave to File Documents Under Seal [74].

## II.  Defendant Georgia Premium Funding Company's Motion for Leave to File Amended Answer and Crossclaims

Defendant Georgia Premium Funding Company ("Georgia Premium") has motioned this Court for Leave to Amend its Answer and Crossclaims [56].  Georgia Premium claims that, although it did not originally assert a right to any premiums refunded because it was in the process

5

of assigning those rights to TPF, circumstances have changed.  (Def.

Georgia Premium's Mem. of Law in Supp. of its Mot. for Leave to File

Am. Answer and Crosscl. ("Mem. in Supp. of Leave to Amend") [56-1] at

pp. 3-4.)   Georgia Premium states that the assignment was not

completed, and any rights it had planned to assign to TPF, now belong

only to Georgia Premium.   (Id.)   Therefore, Georgia Premium would

like to amend its answer to reflect its belief that it has the right

to any premiums refunded.   It filed this Motion for Leave to Amend

its Answer and Crossclaims [56] on September 26, 2007, which fell

after the deadline to make such amendments as set forth in the Joint

Preliminary Report [43].   Plaintiff American General objects to

Georgia Premium's Motion to Amend. (Pl.'s Resp. to Georgia Premium's

Mot. for Leave to Amend [59].)  The Court now addresses this dispute.

### A.  **Rule of Law Governing the Motion to Amend**

Federal Rule of Civil Procedure 15(a) states that an amendment

is a matter of course until the amending party is served with a

responsive pleading, or within 20 days of being served, if a trial

date is not yet set. FED. R. CIV. P. 15(a).  However, "[i]n all other

cases, a party may amend its pleading only with the opposing party's

written consent or the court's leave.  The court should freely give

leave when justice so requires."  Id. at 15(a)(2).

In addition, the court may, "[o]n motion and reasonable notice,

... permit a party to serve a supplemental pleading setting out any

transaction, occurrence, or event that happened after the date of the

6

pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense." *Id.* at 15(d).[6]

The decision to allow the amendment falls within the sound discretion of the district court. *PSG Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 417 F.2d 659, 664 (9th Cir. 1969). Although leave to amend should be freely granted, the Court should consider any issues of undue delay, *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097 (9th Cir. 1998), or whether the amendment will require a new wave of discovery or unreasonably delay the resolution of the action. *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71 (2d. Cir. 1998). In addition, amendment is often denied if the motion is filed in bad faith or with a dilatory motive, when the amendment would be futile, or when the amendment would cause undue delay or prejudice to other parties. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Worsham v.*

---

[6] In this situation, it is unclear whether Rule 15(d) or 15(a)(2) is more appropriate. Some courts state that any change in facts after the pleading has been filed requires a supplemental pleading and not an amendment. See 28 A.L.R. Fed. 129 § 4(a), *Distinctions between supplemental and amended pleadings; misdescription—Distinctions observed* (2007). Whereas other courts focus on whether the change is a continuation of, or a fundamental turn from, the original claims asserted in the pleading. *Id.* It seems that both could be argued here, and it also seems that the distinction between the two is of little consequence. *See* Slip Copy, *McGrotha v. Fed Ex Ground Package System, Inc.*, 2007 WL 640457, *2 (February 24, 2007 M.D. Ga.). The Court will therefore treat the motion as one to amend because Georgia Premium is not only reflecting a change in facts, but a change in its position within the case, and both parties also referred to Premium General's motion as a request for amendment.

*Provident Companies, Inc.*, 249 F. Supp. 2d 1325, 1334 (N.D. Ga. 2002)(citing *Faser v. Sears, Roebuck & Co.*, 674 F.2d 856, 860 (11th Cir. 1982).

In addition, good cause must be shown if a scheduling order is to be changed to accommodate the amended filing. FED. R. CIV. P. 16(b). Because Georgia Premium wishes to amend its answer after the deadline has passed, *see* Joint Preliminary Report [43] at p. 9; Scheduling Order [53] at p. 1, Georgia Premium must show good cause. "The good cause standard is met when, in the exercise of due diligence, the party seeking amendment does not discover the facts justifying the amendment until after the amendment deadline." *American Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 2007 WL 1752471, *1 (N.D. Ga. June 15, 2007)(Duffey, J.); *Smith v. Sch. Bd. of Orange County,* 487 F.3d 1361, 1366 (11th Cir. 2007).

## B. **There is Good Cause to Allow Georgia Premium to Amend its Answer.**

The Court concludes that the good cause standard is met here. The circumstances changed after defendant Georgia Premium filed its answer. Originally, Georgia Premium believed that it was not a proper party to make a claim for the premiums that would potentially be refunded. (Mem. in Supp. of Leave to Amend [56-1] at p. 5.) Georgia Premium instead believed that TPF would be the proper party because Georgia Premium planned, and was in the process of, assigning its rights under its contract with Mr. Margolis to TPF. *(Id.)* Georgia Premium's Answer was therefore correct under this assumption.

8

AO 72A
(Rev.8/82)

(*See* Georgia Premium Answer [36].)  However, the situation has now changed.  Georgia Premium did not ultimately assign its rights under the Financing Agreement to TPF, as it originally planned.   (Mem. in Supp. of Leave to Amend [56-1] at p. 5.)  Therefore, Georgia Premium seeks to change its answer to reflect its belief that it does have rights to any premiums to be refunded.

Specifically, on February 14, 2007, approximately two weeks after this lawsuit was filed, Georgia Premium entered into an "Assignment of Premium Finance Loan" agreement with TPF, wherein Georgia Premium was to sell and assign all rights, title, and interest in the Premium Finance Documents to TPF.  (Mem. in Supp. of Leave to Amend [56-1] at p. 4.)   Pursuant to the assignment agreement, Georgia Premium answered plaintiff's complaint on May 3, 2007, making no express claim to the potential refund.   (*Id.*) However, the assignment did not come to fruition.  In fact, on July 18, 2007, Georgia Premium and TPF entered into a "Reassignment of Premium Finance Loan" agreement, wherein TPF purported to sell and assign any and all rights to the Finance Agreements that it may have received earlier, back to Georgia Premium.  (*Id.*)  Georgia Premium now wishes to assert its rights to a return of the premium if the policy is rescinded.  Accordingly, Georgia Premium filed its Motion for Leave to Amend on September 26, 2007.  (*Id.*)  At the time of its filing, a trial date had not yet been set and discovery was set to expire on October 1, 2007.  (Scheduling Order issued on August 24,

AO 72A
(Rev.8/82)

2007 [53].)  However, the deadline for amendments had passed.  (*Id.*)

The Court finds here that good cause has been shown to permit an amendment under FED. R. CIV. P. 16(b) and 15(a).  Georgia Premium had no way of knowing that its position with regard to this lawsuit would change.  The Court acknowledges that Georgia Premium could not have met the deadline with due diligence because its rights with regard to the premiums did not change until after the deadline had passed.  *See Smith v. Sch. Bd. of Orange County,* 487 F.3d 1361, 1366 (11th Cir. 2007).  The Court therefore concludes that it is in the interests of justice to permit Georgia Premium to amend its answer and crossclaims.

### C. **Georgia Premium Did Not Unduly Delay and the Motion, if Granted, Will Not Cause Undue Prejudice.**

Plaintiff American General argues here that Georgia Premium unduly delayed in filing its Motion for Leave to Amend [56] and that an amended answer will prejudice plaintiff.  (Pl.'s Resp. to Georgia Premium's Mot. for Leave to Amend [59] at p. 2.)  Plaintiff states that Georgia Premium's argument that it did not know that the reassignment would not be completed is disingenuous.  Plaintiff argues that the assignment documents reflect that Georgia Premium had already received the consideration for the assignment: $500,000 in February of 2007.  (*Id.* at p. 9.)  Therefore, according to American General, Georgia Premium should have known whether consideration had been provided in their contract far before it filed this motion.  (*Id.*)

10

Plaintiff also argues that, even assuming Georgia Premium only knew of its potential rights to the premium refund after the reassignment in July, it waited too long to amend its answer to reflect this change in its position. (*Id.* at p. 10.) Lastly, plaintiff argues that granting the motion will require the Court to reopen discovery, and that this is unduly burdensome and prejudicial to plaintiff. (*Id.* at p. 15.) Plaintiff states:

> [i]n anticipation of the Court entering a default judgment against Margolis LLC and TPF, and in reliance upon Georgia Premium's representation that it had no interest in the Policy, American General proceeded under the assumption that the case would be concluded once the unopposed Motion for Default Judgment was entered. This is because the only Defendant with an alleged interest in the Policy via the various assignments, and per Georgia Premium's representations, was TPF. The result of a default judgment against TPF, the Policyowner, would be a rescission of the Policy, the very relief sought by American General in this Declaratory Judgment Action.

(Pl.'s Resp. to Georgia Premium's Mot. for Leave to Amend [59] at pp. 5-6.) Therefore, plaintiff argues that the case will continue on, which is to plaintiff's detriment, if the Court grants Georgia Premium's motion.

However, Georgia Premium responds by explaining that, although two months passed between the reassignment and the filing of the motion for leave to amend, it was not unreasonable. In fact, Georgia Premium's counsel argues that he was attempting to assess whether Georgia Premium's claim to the refund was already asserted in its

11

original answer, and what impact, if any, the clerk's entry of default against TPF had on Georgia Premium's claims to the refund. (Reply in Supp. of Leave to Amend [64] at p. 4; Declaration of J. David Hopkins, Counsel for Georgia Premium [64-3].)   Moreover, Georgia Premium was also informed on September 7, 2007 by American General that the policy had lapsed due to non-payment during the pendency of the case.   (*Id.* at p. 8.)   This also affected Georgia Premium's strategy for amendment.   (*Id.* at p. 9.)   Three weeks after learning of the alleged lapse, Georgia Premium filed the instant motion.

Georgia Premium also contends that American General has no standing to object to its motion for leave to amend. (Reply in Supp. of Mot. for Leave to Amend [64] at pp. 4-5.)   Although American General has a genuine interest in the issue of whether the policy should be rescinded, Georgia Premium argues that American General has no interest in which party, if any, is entitled to the refund of the premiums paid.   (*Id.*)  Only the other defendants have any interest in this issue in the case, according to Georgia Premium, and they have not objected.   (*Id.*)   Lastly, Georgia Premium claims that American General is only attempting to gain a windfall by objecting to this motion for leave to amend.   (*Id.* at p. 2.)   If the Court grants plaintiff's Motion for a Default Judgment [71] against TPF and

AO 72A
(Rev.8/82)

Margolis Family I, see infra at pp. 34-37,[7] then no other party will have a claim to the refund of the policy premiums, except for American General or Mr. Margolis.   (*Id.*)   Therefore, if the Court denies Georgia Premium's Motion to Amend [56] and grants plaintiff's Motion to Strike Mr. Margolis' Pleadings and Enter Default Judgment Against Mr. Margolis [73], plaintiff would most likely be entitled to any return of the premiums and the case would be over.   Georgia Premium argues that this is an unjust result.

The Court tends to agree with Georgia Premium.   Georgia Premium did not unreasonably delay in filing its motion, and the threat of prejudice here is insufficient to require the Court to deny Georgia Premium's motion.   Although the motion might have been filed more promptly, Georgia Premium has offered an explanation for the delay. *See supra* at pp. 11-12.   The Court will take Georgia Premium at its word that it did not believe it had rights to the Financing Agreement until it completed the reassignment in July, and that it was working on its legal strategy after the reassignment.   (Reply in Supp. of Mot. for Leave to Amend [64] at pp. 6-9.)   In addition, even if Georgia Premium is guilty of undue delay, the Court is not convinced that genuine prejudice will result.

"It is true that prejudice can result where a proposed amendment raises a new legal theory that would require the gathering and

---

[7] Wells Fargo was dismissed from this action by consent [19] and Margolis Family I and TPF will no longer be parties if the Court grants the Motion for Entry of Default Judgment [31] against them.

13

AO 72A
(Rev.8/82)

analysis of facts not already considered by the opposing party...."
*Taylor v. Florida State Fair Authority*, 875 F. Supp. 812, 815 (M.D.
Fla. 1995).   However, here plaintiff has already deposited the
premiums with the Registry of the Court, and its Complaint makes
clear that plaintiff expected this very issue to arise. (Compl. [1]
at p. 14.)   American General states that

> [b]ecause of the potential conflicting claims
> to the premiums, American General is in great
> doubt as to who is entitled to them.   Unless
> these claimants are required to interplead and
> make their respective claims to the premiums,
> American General is in danger of double and
> multiple liability.

(*Id.*)   Therefore, the change in Georgia Premium's answer does not
raise any unexpected issues.   The only prejudice of which the Court
is aware is that American General will not automatically be entitled
to the funds by default, the case will continue, and limited
discovery may have to be reopened.   Although it might be more
expedient for the Court to deny Georgia Premium's motion, justice
requires another result.   The prejudice plaintiff refers to is
therefore insufficient to deny Georgia Premium's motion.

Rule 15(a) states that "[t]he court should freely give leave
when justice so requires."   *Id.* at 15(a)(2).   The Court concludes
that the interests of justice require the Court to permit Georgia
Premium to assert its claim to the refund. *See Middle Atlantic Util.
Co. v. S. M. W. Dev. Corp.*, 392 F.2d 380 (2d. Cir. 1968)(stating that
narrow pleading rules should not be applied to deny an honest party's

14

efforts to gain redress). Georgia Premium did not have the right to assert any claims to the premium refunds in its original answer; now it does. Georgia Premium should have the chance to amend its answer to reflect this change. The Court hereby **GRANTS** Georgia Premium's Motion to Amend its Answer and Crossclaims [56], and the Court **directs the parties to submit a new proposed schedule, within twenty (20) days, for any discovery** that may become necessary as a result of this Court's Order. Georgia Premium's proposed Amended Answer and Crossclaims [56-2] is hereby **deemed filed** as of the date of this Order.

## III. Motion to Dismiss Based on Lack of Personal Jurisdiction

Defendant contends that he is not subject to personal jurisdiction in Georgia, and therefore this Court should dismiss plaintiff's complaint. Plaintiff disagrees. The Court concludes that Mr. Margolis has established sufficient ties with Georgia to make specific jurisdiction appropriate here.

### A. The Rule of Law Governing Personal Jurisdiction

Plaintiff bears the burden of establishing jurisdiction. *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F. 3d 1292, 1303 (11th Cir. 2000). Because the Court did not hold an evidentiary hearing on the motion to dismiss for lack of personal jurisdiction, plaintiff must establish a prima facie case of jurisdiction to survive the motion to dismiss. *Francosteel Corp., Unimetal-Normandy v. M/V Charm*, 19 F.3d 624, 626 (11th Cir. 1994). This may be

15

accomplished by presenting sufficient evidence to withstand a motion for directed verdict. *Id.*

A motion to dismiss "at the pleading stage for lack of personal jurisdiction should ... be treated with caution, and denied if the plaintiff alleges sufficient facts in his complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Bracewell v. Nicholson Air Servs., Inc.,* 680 F.2d 103, 104 (11th Cir. 1982). To the extent the allegations in plaintiff's complaint do not conflict with the evidence, the Court construes the allegations as true. *Morris v. SSE, Inc.,* 843 F.2d 489, 492 (11th Cir. 1988). Where conflicts exist, the Court makes all reasonable inferences in favor of the plaintiff. *Id.*

To assert jurisdiction over non-resident defendants in a diversity action, both the requirements of the long arm statute of the forum state and the due process requirements of the Constitution must be met. *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir. 2002). The Georgia long-arm statute permits the exercise of "personal jurisdiction over any nonresident ... if in person or through an agent, he (1) [t]ransacts any business within this state." O.C.G.A. § 9-10-91. The Eleventh Circuit has held that "[i]n actions arising directly or indirectly from business transacted in the state, the Georgia courts construe the term 'transacting any business' 'most liberally [] to uphold the jurisdiction of the court.'" *Nippon*

*Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 746 (11th Cir. 2002) (internal citation omitted).

In addition, the long-arm statute confers jurisdiction to the "'maximum extent permitted by due process.'" *Nippon*, 291 F.3d at 746 (internal citation and quotation omitted); *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 675 (2005) (Georgia courts should construe transacting business subsection of long-arm statute as reaching to the maximum extent permitted by procedural due process). The inquiries for the Georgia Long Arm Statute and Constitutional due process are therefore coextensive. Because the Georgia Supreme Court has determined that the Georgia long-arm statute, at least with respect to the transacting business prong, extends as far as due process allows, this Court will examine whether constitutional personal jurisdiction exists. *Peridyne Tech. Solutions, LLC v. Matheson Fast Freight, Inc.*, 117 F. Supp. 2d 1366, 1369 (N.D. Ga. 2000)(court may pass over analysis of state statutory jurisdiction and exercise jurisdiction where constitutional requirements are satisfied when long-arm statute confers personal jurisdiction to the limits of Due process) (internal citations omitted). If it exists, the Georgia requirements will also have been met.

The exercise of personal jurisdiction comports with due process when "'(1) the nonresident defendant has purposefully established minimum contacts with the forum ... and (2) the exercise of

17

jurisdiction will not offend traditional notions of fair play and substantial justice.'" *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997) (internal citation omitted); *see also Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 853 (11th Cir. 1988) ("[a] 'constitutionally sufficient relationship' exists if the non-resident defendant has adequate 'minimum contacts' with the forum state and if the assertion of a forum's jurisdiction comports with the 'traditional notions of fair play and substantial justice.'") (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

In order to establish the requisite minimum contacts, plaintiff may demonstrate either general or specific jurisdiction. *Id.* In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-415 (1984), the Supreme Court recognized a distinction between constitutional limitations on "general jurisdiction" and "specific jurisdiction." General jurisdiction is asserted when a defendant's conduct with the forum state is "continuous and systematic." *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1986). Specific jurisdiction may be asserted where the defendant's contact with the forum state is directly related to the cause of action. *Nippon Credit Bank*, 291 F. 3d at 747 (internal citations omitted). The requirements for general jurisdiction are more stringent than for specific jurisdiction, and must be sufficiently continuous and systematic to justify haling the defendant into the forum state. *Id.* Plaintiff did not articulate

18

AO 72A
(Rev.8/82)

whether it was relying on a theory of specific or general jurisdiction; however, the Court concludes that plaintiff can establish specific jurisdiction here. Therefore, the Court need not consider whether general jurisdiction exists.

### B. Mr. Margolis Meets the Minimum Contacts Test.

In order to establish minimum contacts for purposes of specific jurisdiction consistent with due process, a plaintiff must demonstrate that defendant's contacts with the forum state satisfy the following three criteria. The defendant's activities must (1) be related, or have given rise to, plaintiff's cause of action; (2) involve an act by which defendant purposefully avails himself of the privilege of performing activities in the forum state, thereby invoking the benefits and protections of the state's laws; and (3) be such that defendant should reasonably anticipate being haled into court in the forum state. *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005) (internal citation omitted). Here, plaintiff has established all three factors.

Even a "single act can be sufficient to satisfy the minimum contacts test, even an act that occurs outside the forum." *DeLong Equip. Co. v. Washington Mills Abrasive Co., et al.*, 840 F.2d 843, 851 FN 10 (11th Cir. 1988); *Nat'l Egg Co. v. Leumi le-Israel B.M.*, 504 F.Supp. 305, 309-10 (N.D. Ga. 1980)(holding single telephone conversation sufficient contact with forum state where it was critical to allegations of fraud). Here, Mr. Margolis has truly

19

established a presence and contacts within Georgia in connection with the American General Policy, and specific jurisdiction is appropriate.

Mr. Margolis obtained a Georgia Insurance Policy; seemingly signed and accepted the Policy while in Georgia; created a Georgia LLC for the sole purpose of paying the premiums for the Georgia Policy; and entered into a financing agreement with another Georgia LLC to fund the premium payments. In conjunction with the financing agreement, Mr. Margolis also personally agreed to assist the Georgia limited liability company that he had created in its financing of the payment of his life insurance policy. ("Insured Life's Consent" attach. as Ex. J to Opp'n to Mot. to Dismiss.) These ties to Georgia clearly meet the minimum contacts requirements for specific jurisdiction.

That is, Mr. Margolis completed the requisite forms for the policy, and seemingly signed each in Georgia. Mr. Margolis signed a Financial Questionnaire and the "Georgia Version" of Parts A and B of American General's life insurance application as the "Proposed Insured," and it appears he signed these documents in "Atlanta, Georgia." ("Financial Questionnaire" attach. as Ex. A to Opp'n to Mot. to Dismiss at 2; "Part A Application for Insurance" attach. as Ex. A to Opp'n to Mot. to Dismiss; "Part B Application for Insurance"

20

attach. as Ex. B to Mot. to Dismiss.)[8] In addition, the Policy states that it is a "Georgia Contract," and Mr. Margolis signed the Policy Acceptance form in Atlanta, Georgia.  (Policy at 3.)

In addition to executing the above forms, ostensibly in Atlanta, Georgia, plaintiff formed a Georgia limited liability company, known as Margolis Family I, by filing Articles of Organization with the Secretary of State of Georgia, apparently for the purpose of paying the premiums for the Policy.  ("Operating Agreement" attach. as Ex. D to Opp'n to Mot. to Dismiss; "Ownership Certificate" attach. as Ex. E to Opp'n to Mot. to Dismiss indicating that plaintiff owns one hundred percent of Margolis Family I, LLC.)   Margolis Family I's principal office and registered office are in Atlanta, Georgia, and (Operating Agreement at Articles 2.2 and 2.3) the Operating Agreement acknowledges that Margolis Family I is subject to the laws of Georgia. (Article 5.6)[9]

---

[8]  Margolis argues in his reply that the financial questionnaire was witnessed in New York by his insurance broker and faxed by Carnegie Group on February 1, 2005, and was filed in Houston, Texas by plaintiff.  Margolis does not offer the Court any explanation as to where Parts A or B of the Insurance Application were signed.  More importantly, Margolis does not contest the validity of the documents attached as Exhibit A to plaintiff's opposition to defendant's motion to dismiss.  The Court concludes that these documents--the Financial Questionnaire and Parts A and B of the Insurance Application--speak for themselves, and indicate that they were executed in Georgia. Even if they were not signed in Georgia, Mr. Margolis engaged in other activities that could alone satisfy the minimum contacts requirements.

[9]  Article III of the Operation Agreement describes the business of the company, and provides as follows: "The sole and exclusive purpose of the Company is to enter into and perform its obligations

Mr. Margolis, on behalf of himself as the insured, and on behalf of Margolis Family I, also entered into a Premium Life Financing Agreement with Georgia Premium Funding Company I, LLC, a Georgia limited liability company. ("Financing Agreement" attach. as Ex. F to Opp'n to Mot. to Dismiss at 1; "Certificate of Organization" attach. as Ex. G to Opp'n to Mot. to Dismiss.)  The parties entered into the loan agreement "for the sole purpose of paying the First-Two Years Premiums for the Policy and the other amounts shown in the calculation of the Loan Amount in the LLC Contract."  (*Id.; See* "Promissory Note" attach. as Ex. I to Opp'n to Mot. to Dismiss).  The

---

under that certain Premium Life Premium Financing Agreement in substantially the form attached hereto as Exhibit A...to be entered into among the Company, the Lender [Georgia Premium Funding Company I, LLC] and Edward Steinberg, a Florida resident, (the "Insured")."

The Court finds it perplexing that the Operating Agreement lists Edward Steinberg as the insured.  None of the parties have offered any explanation as to why Edward Steinberg is listed as the insured instead of Marvin Margolis.  Plaintiff also failed to attach the referenced Premium Life Premium Financing Agreement so the Court cannot determine if the listing of Edward Steinberg comports with the Premium Life Premium Financing Agreement, or, perhaps, if the reference to Edward Steinberg is a typographical error.  Based upon the other signed documents and the briefing of the parties, it appears that Margolis created Margolis Family I so that the premiums on his own life insurance policy could be paid.

In any event, despite this oddity, and potential typographical error, the Court finds that each of the other agreements and documents indicate an intent by Margolis to establish a company in Georgia to funnel funds to pay the first two years of his premiums for his life insurance policy.  To the extent that this contract only obligates Margolis Family I to pay for the premiums of Edward Steinberg's life insurance policy, the Court still finds adequate grounds for subjecting Margolis to personal jurisdiction in Georgia, based on the pleadings and evidence.

22

AO 72A
(Rev.8/82)

Promissory Note for the financing agreement also states that it was executed in Atlanta, Georgia. (*Id.* at 5.)

Mr. Margolis also personally agreed to help repay the loan to Georgia Premium Funding Company. He entered into an agreement referred to as "Insured Life's Consent," whereby Mr. Margolis, the "insured life" agreed to assist Margolis Family I in financing the payment of his life insurance policy. ("Insured Life's Consent" attach. as Ex. J to Opp'n to Mot. to Dismiss) Pursuant to the Insured Life's Consent, Mr. Margolis agreed, represented, and warranted that "[t]he Insured Life consents to the issuance of the Policy to the Borrower based on his/her life pursuant to the requirements of O.C.G.A. § 33-24-6." (*Id.*)

In conjunction with the Financing Agreement, Mr. Margolis also pledged collateral to induce Georgia Premium Funding to loan the Policy premiums. ("Pledge Agreement: attach. as Ex. L to Opp'n to Mot. to Dismiss). The Pledge Agreement specifically states that "[t]he Pledgor and Lendor acknowledge and agree that this Agreement is being executed and delivered in Atlanta, Georgia and the loan being made by lender to Borrower is being contemplated and performed in Atlanta, Georgia." (Pledge Agreement at § 20.) The Pledge Agreement also contains a consent to jurisdiction clause, which provides that the parties agree to the exclusive jurisdiction of the Northern District of Geogia. (*Id.* at § 22.)

AO 72A
(Rev.8/82)

The Court must determine whether these transactions constitute the requisite minimum contacts in Georgia.    The test for minimum contacts asks whether (1) the contacts are related to the plaintiff's cause of action, or have given rise to it; (2) the contact involves an act by which the defendant purposefully availed himself of the benefits and protections provided by the forum state; and (3) the defendant's contacts within the state should be such that the defendant should reasonably foresee being haled into court there. *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005); *Thornwood Lease Plan, Inc. v. Action Ad of Tidewater, Inc.*, 650 F. Supp. 34, 36 (N.D. Ga. 1986)(citing *Davis Metals, Inc. v. Allen*, 230 Ga. 623, 198 S.E.2d 285 (1973)).    Mr. Margolis meets all three.

Mr. Margolis meets the first requirement, despite his contentions to the contrary.    Defendant argues that despite the creation of Margolis Family I and the other actions that he took in Georgia, he is not subject to personal jurisdiction in Georgia. Margolis argues that the sole issue in this case--whether he made material misrepresentations on his application for insurance--only implicates defendant's connections to Georgia with respect to the application process.    ("Mot. to Dismiss" [14] at pp. 10-13.) According to defendant, each of the transactions relating to his procurement of the Policy took place outside of Georgia. (*Id.*) Defendant, therefore, suggests that the Court ignore the fact that he established a limited liability company in Georgia and that he

24

entered into numerous transactions with a Georgia company to pay the premiums for the Policy in question.

However, the Court cannot ignore the very documents that gave rise to the Policy that plaintiff now seeks to rescind. Moreover, various components of the insurance application indicate that defendant signed them in Atlanta, Georgia. In fact, everything Mr. Margolis did in Georgia was integrally tied to the Policy and claims at issue. The Georgia insurance Policy is the subject of this suit, and everything else Mr. Margolis engaged in within Georgia was in furtherance of obtaining and maintaining that contract. Therefore, the connection between the acts in Georgia and the claims alleged is clear.

Mr. Margolis also satisfies the second prong of the test. He purposefully executed a Georgia Policy, and he availed himself of the benefits of that contract and the Georgia laws that governed it. He also engaged in business with a Georgia company, signing a financial agreement with Georgia Premium LLC, and personally guaranteed that loan. *See Club Car v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 785 (11th Cir. 2004) (finding that the defendant was subject to personal jurisdiction because he "enjoyed the substantial financial benefit from the distribution agreement, which he induced [plaintiff] to enter by personally guaranteeing [the] debts."). Mr. Margolis knowingly entered into these agreements under the laws of Georgia.

25

The laws of Georgia would protect Mr. Margolis had plaintiff breached the insurance contract, and they protect plaintiff in the same way in this lawsuit.

Lastly, the extent of activity in which Mr. Margolis engaged in Georgia should have forewarned him of his ability to be sued here. Indeed, the contracts for the Policy and for the Financing Agreement provided for enforcement in the State of Georgia under Georgia law. *Id.* Therefore, Mr. Margolis should have been aware that he could be haled into court in Georgia. The Court therefore concludes that Mr. Margolis has sufficient minimum contacts to meet the test for specific jurisdiction.

The Eleventh Circuit opinion in *McGow v. McCurry* confirms this result. In *McGow v. McCurry*, the Eleventh Circuit found that an insurance company established the minimum contacts in Georgia, and met the three-prong test, by issuing an insurance policy that provided coverage throughout the United States, including Georgia. *McGow*, 412 F.3d at 1214. If issuing a general policy, which provides for nationwide coverage is sufficient to establish minimum contacts in Georgia, Mr. Margolis' actions here should also be sufficient. He entered into a contract for a Georgia-specific policy, started a Georgia company in association with that contract, and transacted business with a Georgia financing company in connection with that contract. The Court finds these activities sufficient to establish

26

minimum contacts in this state.

### C. **Subjecting Mr. Margolis to Personal Jurisdiction in Georgia Comports with Traditional Notions of Fair Play and Substantial Justice.**

Because plaintiff can establish minimum contacts, the Court must determine whether exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *Commercial Cas. Ins. Co., Inc. v. BSE Mgmt., Inc.*, 734 F. Supp. 511, 515 (N.D. Ga. 1990) (internal citation omitted). Once minimum contacts with the forum state are established, those contacts must be considered in light of reasonableness factors to determine whether the assertion of personal jurisdiction would comport with traditional notions of fair play and substantial justice. *Madara v. Hall*, 916 F.2d 1510, 1517 (11th Cir. 1990) (internal citations omitted). These factors include the "burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies." *Id.* (internal citations omitted).

Analysis of these factors does not change the Court's view that it has personal jurisdiction over defendant. First, the Court concludes that the burden on defendant of defending this suit in

AO 72A
(Rev.8/82)

Georgia is not unreasonable.  Modern means of communication and transportation greatly reduce any burden on defendant in having to defend a suit not located in the state of his residence.  In fact, defendant flew back and forth from New York to Georgia in one day to file his reply to plaintiff's opposition to defendant's motion to dismiss and to meet with plaintiff's counsel to discuss settlement. ("Margolis Decl." attach. to Reply to Opp'n to Mot. to Dismiss; "Boarding Pass" attach. as Ex. 13 to Reply to Opp'n to Mot. to Dismiss.)

Second, though plaintiff, American General, has its home office in Texas, the forum state of Georgia has an interest in this litigation because two different Georgia companies are involved in the financing of defendant's Policy.  It also appears that a number of the relevant contracts purport to be Georgia contracts. Moreover, the plaintiff has an interest in securing relief in this case, and it chose this forum to resolve the dispute.  Finally, the Court concludes that the judicial system's interest in obtaining the most efficient resolution of controversies and the interest of the states in furthering fundamental social policies would be served by subjecting Margolis to the jurisdiction of this Court.[10]

---

[10]  Because the Court concludes that defendant is subject to personal jurisdiction under the long-arm statute and the Due Process Clause, the Court need not consider whether service of an amended complaint, which did not initiate the law suit, on defendant while in

28

IV.  **Motion to Dismiss or, in the Alternative, to Transfer Based on Improper Venue**

Defendant also challenges the propriety of venue in this district.  Pursuant to 28 U.S.C. § 1391(a), a civil action based on diversity of citizenship may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a)(2).  The Policy documents and discussion above indicate that a number of the components of the insurance application were signed in Atlanta, Georgia; that defendant established Margolis Family I in Georgia; that this company was a co-signer and owner of the Policy; and that Mr. Margolis entered into an agreement with another Georgia company to fund the first two years of premiums for the Georgia Policy.  *See supra* at pp. 8-13.  The Court finds these acts and transactions sufficient to make venue proper in this district.

Defendant once again argues that the transactions relating to the financing of defendant's Policy are not relevant to the ultimate issue to be decided in this case--whether defendant made material misrepresentations regarding his finances in his application for insurance.  (Def.'s Mot. to Dismiss [14] at pp. 10-13; 21-25.) Therefore, defendant suggests that the appropriate venue is where the defendant prepared the application, and where the application was

---

Georgia, is sufficient to establish personal jurisdiction.

presented and reviewed. (*Id.* at p. 22.)

It is important to note that not all of the "substantial activities" need to take place in this district in order for venue to be proper here. In fact, this district could still be proper, even if activities occurring in New York were more substantial than those occurring here. 28 U.S.C. § 1391, Commentary on 1988 and 1990 Revisions of Section 1391 at p. 9. Therefore, even if Mr. Margolis is correct and venue is proper in New York, that would not necessarily make venue improper in this district. *Id.*

This district is proper "as long as 'substantial' activities" took place here. *Id.*; 28 U.S.C. § 1391(a)(2); *see Hardee's Food Systems, Inc. v. Beardmore*, 169 F.R.D. 311, 316 (E.D.N.C. 1996). The Court has determined this to be the case. Mr. Margolis entered into more than one Georgia contract, (the Policy contract and the financing contract with Georgia Premium), subjected himself to Georgia laws, and created a Georgia limited liability company to fund his obligations in Georgia. These activities are substantial, and they are sufficient to make venue proper in this district under 28 U.S.C. § 1391(a)(2).

In addition, the funding of defendant's Policy, including the creation of Margolis Family I and related financial documents, is integrally related to the issues in this case, including whether defendant made misrepresentations regarding his finances. In fact,

30

if defendant needed to establish a limited liability company and executed a number of agreements merely to pay the premiums associated with his Policy, it calls into question defendant's financial fitness and his ability to pay. Therefore, the Court concludes that venue is appropriate in the Northern District of Georgia under section 1391 because a substantial part of the events giving rise to the claim took place here.

## A.   **Motion to Transfer Under 28 U.S.C. § 1404(a)**

Defendant requests that this Court dismiss or, alternatively, transfer this case to the Southern District of New York.[11]  A motion to transfer is governed by 28 U.S.C. § 1404(a).  28 U.S.C. § 1404(a) provides as follows: "(a) [f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer

---

[11]  Defendant argues that this Court should dismiss this action under the doctrine of *forum non conveniens*. Defendant misunderstands this ancient common law doctrine.  *Forum non conveniens* grants a district court authority to dismiss an action, even if personal jurisdiction and venue are proper, when a more convenient forum for the action exists.  *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1304-1305 (11th Cir. 2002).  However, 28 U.S.C. § 1404(a) grants district courts the authority to transfer a cause of action to another, more convenient, district court.  Because district courts can transfer cases under Section 1404, the doctrine of *forum non conveniens* is only appropriate when the more convenient forum is a foreign country.  *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 ftn. 2 (1994).  Because defendant does not suggest that a foreign court is more convenient, this Court will not dismiss the action under the doctrine of *forum non conveniens*.  To the extent defendant argued for dismissal under Section 1406(a), the Court denies such a request for the reasons discussed above.

any civil action to any other district or division where it might have been brought." Section 1404(a) presupposes that plaintiff brought the action in a proper venue, but allows transfer to a more convenient forum. Commentary on 1996 Amendment to Section 1404, 28 U.S.C. § 1404.

Generally, a court should not grant a transfer if the transfer would just shift inconvenience from one party to another. *Peridyne Tech. Solutions, LLC*, 117 F. Supp. 2d at 1373. In determining whether to transfer a cause of action under 28 U.S.C. § 1404(a), a court should consider the following factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).

Based on the above factors, the Court concludes that it should not transfer plaintiff's action to the Southern District of New York. There is simply no indication that defendant could not defend this suit if it were in Georgia. First, Mr. Margolis failed to demonstrate that he or any other potential witness who resides in New York would be greatly inconvenienced if he were required to travel to

32

Georgia. In fact, defendant has already taken a one-day trip to Atlanta to file a court document and to discuss settlement options in this case. Moreover, many of the potential witnesses defendant identifies in his initial disclosures as residing in New York are defendant's physicians. (Def.'s Initial Disclosures [46] at attach. A.) However, plaintiff's complaint does not make allegations regarding defendant's medical condition; rather, plaintiff's complaint claims that Mr. Margolis made material misrepresentations regarding his finances. (Compl. [1].) Therefore, it is unlikely that these witnesses would even be necessary to defend this case.

In addition, the evidence and documentation needed for the suit should already be in Georgia or easy to transport here. Documents regarding Margolis Family I and Georgia Premium Funding Co., which are Georgia limited liability companies, are most likely to be found in Georgia. Although the paperwork held by plaintiff may be in Texas (not the Southern District of New York) because American General's home office is located in Texas, there is no reason to believe that these documents cannot be transported to Georgia. In the same way, Mr. Margolis' documents can also be transported to Georgia, and should already have been provided through discovery.

Based on the uncontroverted allegations in plaintiff's complaint, the locus of operative facts also occurred in Georgia. *Supra* at pp. 19-20. The Policy states that it is a Georgia contract

33

and the Financing Agreement was also a Georgia contract.    In
addition, the application for insurance indicates that it was signed
in Georgia.   The Georgia courts would be most familiar with Georgia
contract law, should this be the law that governs the suit.    The
Court also must give weight to the plaintiff's choice of forum, and
plaintiff chose the Northern District of Georgia.    *Manuel v.
Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005).   Mr. Margolis
has not provided any evidence suggesting that this Court should
override plaintiff's choice.    Finally, trial efficiency and the
interests of justice, based on the totality of the circumstances,
would be served by maintaining venue in Georgia.   The Court therefore
concludes that defendant's motion to dismiss and/or transfer the case
should be **DENIED**.

## V.    Plaintiff's Application for Default Judgment with Respect to Margolis Family I, LLC and TPF Holding Company, LLC

On April 24, 2007, plaintiff requested that a default judgment
be entered against Margolis Family I and TPF Holding ("TPF") for
failure to answer, plead, or otherwise respond to plaintiff's
allegations.    (Mot. for Default Against Margolis Family I and TPF
[31].)   The Court addresses this now.

Plaintiff filed a complaint against a number of defendants,
including Margolis Family I, on January 26, 2007.   Margolis Family I
was served on January 26, 2007.    ("Margolis Family I Return of

34

Service" [5].)  Mr. Margolis individually, and on behalf of Margolis Family I, requested an extension of time to file an answer or otherwise respond to plaintiff's complaint.  American General agreed to this extension.  ("February 14, 2007 Letter" attach. as Ex. B to Mot. for Default.)  According to plaintiff, prior to the expiration of this extension, Mr. Margolis requested another extension from American General.  ("Mem. in Supp. of Mot. for Default" [31] at 3.)  American General agreed to a two-week extension to file an answer to the complaint, but did not agree to any further extensions to otherwise respond to plaintiff's complaint.  (*Id.*)  Mr. Margolis, therefore, had until April 4, 2007 to file an answer, and until March 21, 2007 to file any other responsive pleading.  (*Id.*)  Neither Mr. Margolis nor Margolis Family I requested an Order from the Court granting the extension.  Mr. Margolis, proceeding *pro se*, and on behalf of himself, filed a motion to dismiss on March 15, 2007. (Mot. to Dismiss [14].)  To date, Margolis Family I has not filed any responsive pleadings.

Meanwhile, on March 12, 2007, plaintiff amended its complaint, adding TPF as a party due to the attempted assignment by Georgia Premium Funding of "all of its right, title and interest in the Premium Finance Documents" to TPF.  (Amend. Compl. at ¶ 42.)  TPF was served with the Amended Complaint on March 22, 2007.  ("TPF Return of Service" [22].)  Under the Federal Rules of Civil Procedure, TPF

AO 72A
(Rev.8/82)

should have filed an answer by April 11, 2007.   TPF has yet to file a responsive pleading.

On April 9, 2007, this Court issued an Order indicating that corporations may not proceed *pro se* and directed Margolis Family I and TPF to have counsel make an appearance on their behalf.   ("April 9, 2007 Order" [23] at 1.)   The Court further indicated that Margolis Family I had been served on January 26, 2007 and that "plaintiff should file all appropriate motions as to defendant Margolis Family I, LLC promptly."   (*Id.* at 1 ftn 2.)   Pursuant to the Court's Order, plaintiff filed a motion for default judgment against Margolis Family I and TPF.   (Mot. for Default Against Margolis Family I and TPF [31].)

Federal Rule of Civil Procedure 55(a) provides, in pertinent part, that a default judgment may be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules."   FED. R. CIV. P. 55(a).   The Eleventh Circuit instructs district courts to utilize a strict standard when evaluating a motion for default judgment.   In *Owens v. Benton*, 190 Fed. Appx. 762, 763 (11th Cir. 2006), the Eleventh Circuit stated "'[e]ntry of judgment by default is a drastic remedy which should be used only in extreme situations, as the court has available to it a wide range of lesser sanctions.' There is a strong preference that cases be heard on the merits instead of

imposing sanctions that deprive a litigant of his day in court."
(internal citation and quotation omitted.)

Though the Court is cautious about granting motions for default
judgment, the Court finds entry of a default against Margolis Family
I and TFP appropriate at this time.   Neither party has filed a
responsive pleading or otherwise responded to plaintiff's motion for
default.   Furthermore, neither party has entered an appearance in
this action.   The notice and hearing provisions of Rule 55 are not
applicable where a party has not made an appearance. *Solaroll Shade
and Shutter Corp., Inc. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1134
(11th Cir. 1986) (internal citation omitted).   The Court, therefore,
**GRANTS** plaintiff's motion for default as to both Margolis Family I
and TPF, as unopposed.   (Mot. for Default Against Margolis Family I
and TPF [31].)

## VI.   Plaintiff's Motion to Strike Mr. Margolis' Defensive Pleadings and for Judgment by Default Against Mr. Margolis

Plaintiff also seeks to strike Mr. Margolis' defensive pleadings
for his failure to comply with its discovery requests and for failing
to comply with this Court's Order compelling those responses, issued
on December 14, 2007.   (Order Granting Motion to Compel [71].)   If
the Court strikes Mr. Margolis' pleadings, a judgment of default
would then be appropriate. FED. R. CIV. P. 37(b)(2)(A).   Although Mr.
Margolis has clearly not cooperated with plaintiff's requests, this

37

AO 72A
(Rev.8/82)

Court will not yet resort to the extreme remedy of default. The Court instead will grant Mr. Margolis one more final extension to comply before it strikes his pleadings and enter default against him.

Federal Rule of Civil Procedure 37(b)(2)(A) provides the district court with authority to strike defensive pleadings and issue default judgments. Rule 37 provides in relevant part:

> If a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders. They may include the following:
>
> > (iii) striking pleadings ... in whole or in part;
> >
> > (vi) rendering a default judgment against the disobedient party....

FED. R. CIV. P. 37(b)(2)(A).

Although the district court is given wide discretion to determine the appropriate sanctions under Rule 37, the court must be cautious when issuing default judgments. *See Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988)(stating that a default judgment should be a last resort). Simple negligence, misunderstanding, or inability to comply will not justify a default under Rule 37. *In re Chase and Sanborn Corp.*, 872 F.2d 397, 400 (11th Cir. 1989). However, if the Court's less drastic sanctions do not produce compliance, a judgment of default may be appropriate. *Id.*

Plaintiff served discovery on Mr. Margolis on September 7, 2007.

38

(Mot. to Compel [70] attach. A through E.)   Mr. Margolis did not respond, and plaintiff motioned this Court to compel his responses. (Mot. to Compel [70].)   This Court granted plaintiff's request and ordered defendant to comply with plaintiff's discovery requests "by the close of business on Wednesday December 19, 2007."   (Order Granting Motion to Compel [71] at pp. 1-3.)

In response to the Court's Order, Mr. Margolis did produce some relevant documents that plaintiff had requested.   These include: (1) Margolis Family I, LLC's Operating Agreement (Margolis 0090-0111); (2) a detailed credit report (Margolis 008-0023); and (3) his personal tax returns for 2004 through 2005 (Margolis 0130-0141). However, Mr. Margolis failed to fully answer a number of interrogatories, and he failed to produce a number of very important documents. He did not produce his personal tax returns for 2002, and he failed to produce the tax returns for the two companies that he cited to on his application for the Policy, Interlex Ltd. and Xtra Marketing Corp., the companies allegedly responsible for his net worth at the time he applied for the Policy at issue.   Furthermore, Mr. Margolis failed to produce the tax returns for Margolis Family I. In addition, plaintiff asked Mr. Margolis to explain in detail how his January 31, 2005 net worth was determined.   This inquiry is crucial to plaintiff's case. However, Mr. Margolis only referenced the personal balance sheet that he originally used when applying for

the Policy in the first place.

Mr. Margolis responds to plaintiff's motion [70] by emphasizing that he did respond to plaintiff's complaint with his Motion to Dismiss and/or Transfer [14], and that this Court had not yet responded to his motion.   (Def.'s Resp. to Pl.'s Mot. to Strike Defensive Pleadings and for Judgment by Default [80] at pp. 1-2.) Mr. Margolis also explains that he is eighty-one years old and underwent quadruple bypass surgery in August 2005.   For this reason, it is difficult for him to "conduct full time activities."   (*Id.* at p. 3.)

While the Court understands that Mr. Margolis did file responsive pleadings, that is not Mr. Margolis' only responsibility in this litigation.   Mr. Margolis is also required to fully respond to discovery, whether his own motions have been resolved or not. Indeed, Mr. Margolis would have been subject to the same discovery obligations whether his case was litigated in Georgia or in New York. Mr. Margolis's excuse appears to be a stalling tactic.   In any event, the Court has now resolved Margolis's Motion to Dismiss and/or Transfer [14] in this Order, and it expects Mr. Margolis to keep up with his obligations in this lawsuit.   The Court is sympathetic to Mr. Margolis' medical condition.   However, his medical condition does not explain or excuse his inconsistent and incomplete responses to plaintiff's discovery requests.   For example, Margolis's medical

40

condition does not explain why he produced tax returns for a company that is unrelated to this lawsuit, but failed to produce tax returns for Margolis Family I.[12]

It is clear that plaintiff seeks information regarding Mr. Margolis' financial situation during the time of his insurance application so that it may determine and prove that Mr. Margolis provided fraudulent information on his insurance application. Mr. Margolis, however, seems to have avoided producing documents and answering questions that are crucial for plaintiff to be able to make its case. The Court suspects that this omission is no accident. Nevertheless, the Court is aware that Mr. Margolis is proceeding *pro se* and has taken that fact into consideration. For this reason, the Court will not immediately strike his pleadings and enter default against him. Instead, Mr. Margolis is hereby **ORDERED to produce all documents and answer every interrogatory** that plaintiff requested of **him within TEN DAYS of the date of this ORDER.** If Mr. Margolis fails to comply again, the Court will then be forced to assume that his

---

[12]   *See Chase and Sanborn*, 872 F.2d at 400 (To succeed on a defense of inability to comply, the sanctioned party "must go beyond a mere assertion of inability and ... introduc[e] evidence in support of his claim."). To the extent that Mr. Margolis' statements that he is eighty-one and in poor health, are assertions of his inability to comply, he needs to assert proof. At this point, the Court is unconvinced that he is unable to comply because his responses to discovery have been inconsistent with illness. Moreover, if ill, Mr. Margolis needs to retain someone to provide these documents.

AO 72A
(Rev.8/82)

failure is the consequence of bad faith, and it will **strike his pleadings and enter a default against him**, as plaintiff has requested.

### CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's Motion to Dismiss, or in the alternative, Motion to Transfer Case [14]; **GRANTS** plaintiff's Motion for Default Judgment as to Margolis Family I and TPF [31]; **GRANTS** defendant Georgia Premium's Motion for Leave to Amend its Answer and Crossclaims [56]; **DENIES without prejudice** plaintiff's Motion to Strike Mr. Margolis Defensive Pleadings and Enter Default Judgment Against Him [73];, and **GRANTS** plaintiff's Motion for Leave to File Documents Under Seal [74].

Mr. Margolis is hereby directed to **comply with ALL of plaintiff's discovery requests** and provide the relevant documents and answers to plaintiff within **TEN (10) DAYS of the DATE OF THIS ORDER**. Failure to comply will result in the **entry of a default**.

The remaining parties are directed to **submit a proposed schedule for any discovery remaining** as a result of this Order, within **TWENTY (20) days of the date of this Order**.

SO ORDERED, this ___28___ day of March, 2008.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)